# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

REBECCA L. SWETAVAGE,

    Plaintiff,

v.               CIVIL ACTION NO. 5:07-cv-00430

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION

    Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings [Docket 9], Defendant's Motion for Judgment on the Pleadings [Docket 13], the Proposed Findings and Recommendation (PF&R) [Docket 14] of Magistrate Judge R. Clarke VanDervort, and Plaintiff's Objections [Docket 15] thereto.

    This action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to the court of a PF&R, pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge VanDervort filed his PF&R on August 27, 2008, recommending that the court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings, affirm the final decision of the Commissioner of Social Security (Commissioner), and dismiss this action from the Court's docket. Plaintiff timely filed her objections on September 9, 2008. The briefing is complete, and the matter is now ripe for the Court's consideration.

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Plaintiff Rebecca L. Swetavage was born on December 29, 1954, and was fifty-one years old at the time of her final hearing before the administrative law judge (ALJ). Plaintiff has a high school education and attended junior college for a period of six months. She worked for GTE/Verizon for thirty years as an assignment clerk, programming assistant, sales representative, secretary, and office clerk.

On May 25, 2002, Plaintiff was thrown from a mule-drawn wagon, hitting her buttocks and the back of her head on the ground. Plaintiff retired from GTE/Verizon early on March 6, 2004, and claims that injuries stemming from her 2002 accident prevent her continued employment. On May 24, 2008, Plaintiff filed an application for disability insurance benefits (DIB), which asserts that she suffers significant brain damage, back pain, and mental problems.

Plaintiff's claim was denied initially and upon reconsideration. The ALJ's decision became the final decision of the Commissioner on May 25, 2007. Plaintiff subsequently filed the instant action seeking judicial review pursuant to 42 U.S.C. § 405(g) on July 11, 2007.

*II. STANDARD OF REVIEW*

In reviewing claims brought under the Social Security Act, a district court has a duty to make a searching investigation of the administrative record to assure the findings of the Commissioner are based upon substantial evidence. *Patterson v. Califano*, 475 F.Supp. 578, 579-580 (4th Cir. 1979 (citing 42 U.S.C.A.§ 405(g)). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Further, substantial evidence "consists of more than a mere scintilla of

evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing the administrative record for substantial evidence, a reviewing court may not re-weigh conflicting evidence, make determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Rather, the court must adopt the Commissioner's findings if there is evidence in support of such findings "to justify a refusal to direct a verdict were the case before a jury." *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Thus, even if the court would have reached a different decision, it must nonetheless defer to the conclusions of the ALJ if such conclusions are supported by substantial evidence and were reached through a correct application of relevant law. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### *III. ANALYSIS*

The Social Security Regulations set forth a five-step sequential evaluation to judge the validity of DIB claims. 20 C.F.R. § 404.1520. If a claimant is found not to be disabled at any step of the evaluation, benefits are denied and further evaluation is unnecessary. *Id.* First, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. *Id.* Second, if the claimant is not employed, the ALJ must determine whether the claimant suffers from a severe impairment. *Id.* Third, if the ALJ finds an impairment, the ALJ must determine whether it meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

Regulations No. 4. *Id.* If the impairment meets or equals any of those listed impairments, the claimant is found to be disabled and awarded benefits; however, if the impairment does not, the ALJ must proceed to the fourth step of the evaluation: whether the impairment prevents the performance of past relevant work. *Id.* Fifth and finally, if the claimant establishes that the impairment prevents the performance of past relevant work, the burden shifts to the Commissioner to show that the claimant, in consideration of his or her physical and mental capacities, age, education, and prior work experience, is able to engage in other forms of substantial gainful employment and that such employment exists in the national economy. *Id.*

When a social security disability benefits claimant has mental impairments as well as physical impairments, in addition to applying the five-step evaluation, the ALJ "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). In applying the "special technique," the ALJ evaluates the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). Thereafter, if the ALJ finds an impairment(s) exists, it "rate[s] the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [20 C.F.R. § 404.1520a]." Paragraph (c) provides a detailed description of the assessment of functional limitation, including the procedure for evaluating the level of severity of a claimant's mental impairment by rating the claimant's limitations and restrictions in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

After rating the degree of functional limitations resulting from the claimant's impairments, the ALJ determines if the claimant's mental impairment(s) is severe. 20 C.F.R. § 404.1520a(d). If

the impairment(s) is classified as severe, the ALJ 'will then determine if it meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 404.1520a(d)(2). If the ALJ finds that the claimant has a "severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, [the ALJ] will then assess [the claimant's] residual functional capacity [(RFC)]." 20 C.F.R. § 404.1520a(d)(3).

In determining a claimant's RFC, the ALJ must decide "the most that an individual can do despite his or her limitations or restrictions." Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). To make this decision, the ALJ uses "medical sources, including [the claimant's] treating source, to provide evidence, including opinions, on the nature and severity of [the claimant's] impairment(s). . ." to determine the claimant's RFC. 20 C.F.R. § 416.927(e)(2) (2006). When deciding the weight to give each medical opinion, unless the ALJ gives a treating source's opinion controlling weight[1], the ALJ takes the following factors into account: (1) whether the source has examined the claimant and the length and frequency of the examinations[2], (2) the nature and extent of relationship with a treating physician, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. § 404.1527 (2006).

---

[1] If " the treating source's opinion is [not] given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." 20 C.F.R. § 404.1527(f)(2)(ii)(2006).

[2] Generally, more weight is given to examining sources than to sources who do not examine. 20 C.F.R. § 404.1527(d)(1)(2006). Similarly, more weight is given to treating sources than to examining sources. 20 C.F.R. § 404.1527(d)(2)(2006).

Though the ALJ considers each of the medical opinions, the determination of a claimant's RFC is ultimately the province of the ALJ as delegate of the Commissioner. 20 C.F.R. § 404.1527(e)(2)(2006); *see also, Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The reviewing court must merely determine whether the ALJ's determination of the claimant's RFC is rational and based on substantial evidence. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1947).

In this case, it is not disputed that the ALJ applied the five-step analysis provided in 20 C.F.R. § 404.1520, while following the "special technique" required for review of mental impairments in 20 C.F.R. § 404.1520a. The ALJ determined that Plaintiff satisfied the first inquiry because she had not engaged in substantial gainful employment since the alleged onset date of her disability. (Tr. at 25.) At the second step, the ALJ found that Plaintiff suffered from back strain, an organic mental disorder, and depression, which were classified as severe impairments. *Id.* However, at step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. *Id.* At step four, the ALJ found that Plaintiff's impairments prevent her from returning to her past relevant work. *Id.*

Therefore, the ALJ determined that Plaintiff had an RFC "to perform light exertional level work; she can occasionally climb, balance, stoop, kneel, crouch and crawl; she should avoid concentrated exposure to extreme cold, vibration, and hazards; she requires work involving simple, repetitive tasks." *Id.* Based on testimony provided by a vocational expert (VE) at the administrative hearing, the ALJ concluded that although Plaintiff could not return to her previous employment, she could work as a small product assembler, bottle packager, and laundry folder, at the light exertional level. (Tr. at 24-25.) Thus, the ALJ found Plaintiff "not disabled" within the meaning of the Act and not entitled to DIB (Tr. 25-26.)

Though Plaintiff does not object to the application of the five-step method, Plaintiff's objections challenge Magistrate Judge VanDervort's PF&R on a different ground: she claims that in reaching his determination with respect to Plaintiff's RFC, the ALJ failed to employ the legally proper method for evaluating medical opinions. Specifically, Plaintiff makes three contentions to support her objection: (1) that the ALJ adopted the "mental RFC of a single non-examining consultant, rather than the opinions of three examining sources," (2) that the ALJ and magistrate judge made improper assumptions to resolve ambiguities in the opinion of Defendant's consultative examiner, and (3) that the ALJ patently disregarded the treating physician rule when he failed to attribute weight to some of the treating and examining physicians. The court finds Plaintiff's arguments unpersuasive for the reasons set forth below.

### A.     *The ALJ's Analysis of All Opinion Evidence of Record*

Contrary to Plaintiff's first contention, the court finds the ALJ's decision regarding Plaintiff's RCF to be supported by substantial evidence based on the findings of medical opinions provided in the record. In his report, the ALJ provided a significant number of findings that do not contradict his conclusion that Plaintiff was capable of performing "light exertional level work." First, the ALJ considered objective medial evidence in making his decision. (Tr. at 21.) He noted that "objective medical evidence establishes the presence of underlying physical and mental impairments capable of causing some degree of pain and the mental symptoms alleged [by Plaintiff]." *Id*. The objective medical evidence included but was not limited to: a head CT scan that confirmed posterior subarachnoid hemorrhaging, an angiogram that showed no evidence of aneurysm, cervical x-rays that showed no bony abnormality, and a neurological examination that was within the limits.  (Tr. at 21.)

The ALJ also considered the opinions of five doctors to determine Plaintiff's RFC, only one of which was arguably inconsistent with the ALJ's assessment that Plaintiff was capable of "light work." First, the ALJ considered the testimony of Dr. Thomas Harrison, a neurologist who treated Plaintiff. (Tr. at 21.) Though Dr. Harrison had initially noted cognitive retardation, on August 12, 2002, he reported that Plaintiff had "improved from a cognitive standpoint," and he released her to work part-time. *Id.* Also, though plaintiff suffered a setback in April 2003, she improved again and was able to return to work. *Id.* Dr. Harrison concluded with a diagnosis of "'mild cognitive impairment' secondary to status post head injury, with 'no evidence of any progressive brain disease.'" (Tr. at 22.)

In addition, the ALJ reviewed the testimony of Dr. Cristina Lecaros-Trinidad who conducted a consultative physical evaluation with Plaintiff. (Tr. at 22.) Dr. Lecaros determined that Plaintiff's musculoskeletal and neurological examinations were within normal limits and that she could walk on her heels and toes, squat, and mount and dismount the examining table without difficulty. *Id.* Furthermore, Dr. Lecaros opined that the Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally. *Id.* The ALJ also noted that Dr. Craig Schwartz, the Plaintiff's orthopedist in Florida, agreed that Plaintiff could lift up to twenty pounds. *Id.* The ALJ also recorded his evaluation of licensed psychologist, Dr. Sunny Bell. Dr. Bell noted that Plaintiff had moderate to severe memory impairment, but her concentration, persistence, pace, and intellectual ability were average. (Tr. at 22.) Also, Dr. Bell found that Plaintiff's social functioning was within normal limits. *Id.*

Finally, the ALJ considered the report of Dr. Safiullah Syed, Plaintiff's treating psychologist, who stated that Plaintiff "may not be able to do full-time competitive work as she used to."

8

However, the ALJ decided that Dr. Syed's notes did "not reflect this level of severity and functional limitation." (Tr. at 22.) The ALJ noted that he was giving Dr. Syed's opinion less evidentiary weight because "his opinion is inconsistent with his own findings." (Tr. at 23.) Thus, the ALJ concluded that the medical evidence, the Plaintiff's testimony, and consistent medical source opinions supported the finding that Plaintiff could perform light work. *Id.*

In her Objections to the PR&R of the magistrate judge, Plaintiff asserts that "[i]n direct violation of the treating physician rule, the ALJ, and [] the Magistrate Judge [gave] controlling weight to the RFC of the non-examining physician, Dr. Lim." The record reflects that Dr. Lim did find Plaintiff could lift up to ten pounds frequently and twenty pounds occasionally. (Tr. at 278.) Furthermore, Dr. Lim found that Plaintiff could stand/walk with normal breaks for six to eight hours. Though these findings are consistent with the ALJ's decision that Plaintiff could perform light level work, the ALJ did not specifically reference the findings of Dr. Lim.

Rather, the ALJ gave the opinions of Dr. Lecaros and Dr. Schwartz significant weight when determining Plaintiff's RFC because they were "supported by the medical evidence and are consistent within the record as a whole." (Tr. at 23.) As mentioned above, both Dr. Lecaros and Dr. Schwartz opined that Plaintiff could lift ten to twenty pounds, which is consistent with the ability to do light work.[3] Furthermore, the court agrees with the magistrate judge, who determined that "the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine(s) that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b)(2007).

opinions of Drs. Schwartz and Lecaros-Trinidad also are supported by the...treatment notes of Dr. Shammaa[4] and Sunny Bell." (Docket No. 14 at 20.) Therefore, the court finds that the ALJ properly analyzed all of the opinion evidence of record, and his decision is supported by substantial evidence.

*B.     The ALJ's Resolution of Ambiguities in the Record*

Plaintiff also asserts that the ALJ and magistrate judge improperly "resolve[d] ambiguities in a medical source statement" when they determined that Dr. Lecaros-Trinidad's standing and walking limitation was intended to reference Plaintiff's ability to stand or walk without a break. (Docket No. 14 at 4.) Plaintiff cites to 20 C.F.R. § 404.1512, which states, "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for [the ALJ] to determine whether [a claimant is] disabled, [the ALJ] will need additional information to reach a determination or a decision."

After reviewing the opinion of Dr. Lecaros-Trinidad, in context with the other evidence in this case, the Court finds that the ALJ had adequate evidence to determine Plaintiff's RFC. The ALJ reasonably concluded that Dr. Lecaros-Trinidad's assessment of Plaintiff's standing and walking limitations were in reference to her ability to do so at one time. Dr. Lecaros Trinidad's report supports the ALJ's conclusion because it also said Plaintiff could 'walk[] on her heels and toes without difficulty." (Tr. at 249.) In addition, it said, "[h]er gait and station [are] normal." *Id.* These findings are consistent with the ALJ's finding that Plaintiff can stand or sit throughout the workday, with appropriate breaks.

In addition, information in the record provided by other sources support the ALJ's finding. For instance, during the year he treated Plaintiff, Dr. Shammaa did not record any musculoskeletal

---

[4] Dr. Shamma treated Plaintiff from April 12, 2004, through April 25, 2005. (Tr. at 271-276.)

impairment. (Tr. at 271-276.) In addition, Dr. Shammaa took an x-ray of Plaintiff's left knee, which did not show any "significant bony abnormalities except for slight narrowing of the medical joint compartment." (Tr. at 274.) Also, in her neuropsychological profile of Plaintiff, Dr. Bell noted that Plaintiff had normal posture and gait. (Tr. at 264.)

Moreover, though his opinion was not cited by the ALJ, Dr. Lim's opinion specifically noted that Plaintiff was able to stand and/or walk, with normal breaks, for about six hours in an eight-hour workday. (Tr. at 278.) Dr. Lim also found that Plaintiff could sit, with normal breaks, for about six hours in an eight-hour workday. *Id.* The opinions of Drs. Shamma, Bell, and Lim and the other findings of Dr. Lecaros-Trinidad all support the ALJ's interpretation of Lecaros-Trinidad's assessment. Therefore, the ALJ was not presented with an ambiguity that would require him to obtain additional information to reach a determination or decision.

*C.     Weight Attributed to Treating and Examining Physicians*

Finally, Plaintiff contends that the ALJ's failure "to indicate the weight he attributed to other relevant treating and examining psychologists in record, namely consultative psychologist Sunny Bell and the psychologists at Healthsouth Rehabilitation Hospital," was "a patent disregard for of the treating physician rule [that] cannot stand." However, the magistrate judge found that though "the ALJ may have erred in not assigning weight to the HealthSouth opinions, such error is harmless, as their opinions are reflected in the ALJ's decision and supported by the evidence of record." (Docket No. 14 at 27.)

The court agrees with the assessment of the magistrate judge. An "ALJ's failure to specify the weight accorded to a particular physician is harmless error when a correct application would not contradict the Commissioner's ultimate findings." *Byrd v. Astrue*, 2008 WL 3821971, at *3

11

(M.D.Ala. Aug. 13,2008). Despite the ALJ's failure to specify the weight he accorded to the HealthSouth opinions, the court finds that the Commissioner's ultimate findings would not have been contradicted had the ALJ indicated the weight applied those opinions. Therefore, the error is harmless.

Accordingly, for the reasons stated above, the Court **HOLDS** that the ALJ's determination of Plaintiff's RFC is rational and is supported by substantial evidence. Plaintiff's objection is accordingly **OVERRULED**.

### *IV. CONCLUSION*

Based upon the foregoing, the Court **ADOPTS** the findings and recommendation contained in the PF&R [Docket 14], **DENIES** Plaintiff's Motion for Judgment on the Pleadings [Docket 9], **GRANTS** Defendant's Motion for Judgment on the Pleadings [Docket 13], **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action from the Court's docket. A separate Judgment Order will enter this day implementing the rulings contained herein.

ENTER: September 29, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE